IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

KRISTOPHER MORGAN                                          PLAINTIFF

v.                    Civil No. 5:22-cv-05130

PAROLE OFFICER YOSITA PHAYPANYA;
CLINT DOE, Director, Phoenix House; NICK
DOE, Director, Returning Home; DETECTIVE
WILSON, Springdale Police Department;
DETECTIVE DANNY WRIGHT, Springdale Police
Department; and DETECTIVE NELSON, Springdale
Police Department                                          DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights action filed by Plaintiff, Kristopher Morgan ("Morgan"), pursuant to

42 U.S.C. § 1983. Morgan proceeds *pro se* and *in forma pauperis.* Morgan is currently incarcerated

in the Delta Regional Unit of the Arkansas Division of Correction.

This case is before the Court on the Motion to Dismiss (ECF No. 45) the Amended

Complaint filed by Separate Defendant Parole Officer Phaypanya.   Defendant's Motion is based

on the doctrine of qualified immunity; Morgan has responded to the Motion. (ECF Nos. 55, 59 &

68). Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable P.K. Holmes, Senor

United States District Judge, referred the Motion to Dismiss to the undersigned for the purpose of

making a Report and Recommendation.

## I.    BACKGROUND

This case involves an alleged unlawful search of Morgan's personal property on April 27,

2022 (ECF No. 39 at 5).[1]  At the time, Morgan was living at Phoenix House, a transitional living

---

[1] The Amended Complaint was filed in two parts. The first part was filed on October 19, 2022; the second part was

1

facility licensed by the Arkansas Division of Community Correction. *Id.* Morgan says he was called into the office of Clint Doe "for an incident." *Id.* Morgan alleges that Officer Phaypanya and Clint immediately started "taunting, threatening, and bullying" him. *Id.* Morgan says he was interrogated in a disrespectful manner and coerced into violating his own constitutional rights. *Id.* at 5-6. Morgan describes that Officer Phaypanya left the property for over an hour with possession of Morgan's cell phone. *Id.* at 5. Morgan alleges Nick Doe, who was less than ten feet away and behind closed doors, did nothing to stop the constitutional violations and sided with Clint Doe and Officer Phaypanya. *Id.* at 6. Morgan believes this conduct occurred because of his record as a sex offender and considering a city ordinance that was going into effect. *Id.* As a result of this incident, Morgan alleges he lost all his personal possessions, including his banking information, and subsequently lost his job. *Id.* Morgan contends his progress towards becoming a productive citizen ended due to the search and his subsequent arrest. *Id.*

On April 28, 2022, Morgan says Officer Phaypanya and Detectives Wilson, Wright, and Nelson, illegally searched (and copied) his property at the Springdale Police Department. (ECF No. 41 at 1). Morgan asserts that the warrant authorizing the search was not issued until the following day. *Id.* Morgan claims that Officer Phaypanya and Detectives Wilson, Wright, and Nelson "outright lied in the warrant application and have 2 stor[ies] in the Police Report." *Id.*

Morgan says he has been incarcerated since his arrest and has lost all his worldly possessions; his banking information was copied; he has been threatened by the prosecution with an "obscene amount of prison time from the charges;" and he was unable to attend the funerals of his grandfather and mother. (ECF No. 41 at 1). At the time the Amended Complaint was filed,

---

filed the next day.   (ECF Nos. 39 & 41).

Morgan indicates he was a pretrial detainee who had been convicted in 2021. (ECF No. 39 at 2).

As relief, Morgan seeks compensatory damages in the amount of 100 million dollars and punitive damages in the amount of 60 million dollars. (ECF No. 41 at 4). Additionally, he is requesting 500 acres of land of his choosing "tax free as long as [he] own[s] it." *Id.*

## II.   APPLICABLE STANDARD

Rule 8(a) contains the general pleading rules and requires a complaint to present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).   "In order to meet this standard and survive a motion to dismiss under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft,* 556 U.S. at 678.   While the Court will liberally construe a *pro se* plaintiff's complaint, the plaintiff must allege sufficient facts to support his claims. *Stone v. Harry,* 364 F.3d 912, 914 (8th Cir. 2004).

## III.   DISCUSSION

Officer Phaypanya contends he is entitled to qualified immunity in his individual capacity for the unlawful search and seizure claims.[2]   Further, he contends Morgan has failed to state a claim upon which relief may be granted.

First, Officer Phaypanya argues that – as a resident of a licensed housing facility operated by the Arkansas Division of Community Correction and as a parolee – Morgan's right to privacy

---

[2] The official capacity claim against Officer Phaypanya previously has been dismissed.   (ECF No. 14).

was greatly diminished. Second, pursuant to Ark. Code Ann. §16-93-106(a)(1)-(2), Officer Phaypanya contends he had full authority to search Morgan even if he was not suspected of committing a crime. Thus, Officer Phaypanya contends Morgan's constitutional rights were not violated and the case should be dismissed as a matter of law.

Having invoked the affirmative defense of qualified immunity, the claims against Officer Phaypanya are subject to dismissal only if the officer establishes he is entitled to qualified immunity on the face of Morgan's complaint.  *Dollar Loan Ctr. of S.D., LLC v. Afdahl,* 933 F.3d 1019, 1024 (8th Cir. 2019). "Government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341-43 (1986)). "To overcome qualified immunity, the plaintiff must "plead facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct."  *Ashcroft v. al-Kidd,* 563 U.S. 731, 735 (2011) (cleaned up). "If either prong is not satisfied, the defendant is entitled to qualified immunity." *LeMay v. Mays,* 18 F.4d 283, 287 (8th Cir. 2021) (citing *Norris v. Engles,* 494 F.3d 634, 637 (8th Cir. 2007)).

**(A).   Search of Morgan's Person and/or Place of Residence**

The initial question is whether Morgan has pled facts sufficient to establish Officer Phaypanya violated his Fourth Amendment rights.   The Fourth Amendment provides for "[t]he

4

right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend IV. To assert a violation of the Fourth Amendment, Morgan must possess a legitimate expectation to privacy. *United States v. Green,* 275 F.3d 694, 698 (8th Cir. 2001). "To establish a legitimate expectation of privacy, [Morgan] must demonstrate: (1) a subjective expectation of privacy; and (2) that this expectation is one that society is prepared to recognize as objectively reasonable."   *United States v. Muhammad,* 58 F.3d 353, 355 (8th Cir. 1995).

The statute relied on by Office Phaypanya provides for the warrantless search of probationers and parolees.   Specifically, the statute provides as follows:

> (a)(1)  A person who is placed on supervised probation or is released on parole under this chapter is required to agree to a waiver as a condition of his or her supervised probation or parole that allows any certified law enforcement officer or Division of Community Correction officer to conduct a warrantless search of his or her person, place of residence, or motor vehicle at any time, day or night, whenever requested by the certified law enforcement officer or division officer.

> (2)      A warrantless search that is based on a waiver required by this section shall be conducted in a reasonable manner but does not need to be based on an articulable suspicion that the person is committing or has committed a criminal offence.

Ark. Code Ann. § 16-93-106(a)(1)-(2).[3]

The Arkansas Court of Appeals has held the statute to be constitutional under both the Arkansas and United States Constitutions. *Clingmon v. State,* 620 S.W.3d 184, 190 (Ark. App. 2021) (search of parolee's home). Moreover, the United States Supreme Court has upheld a similar statute authorizing a suspicionless search of a parolee.   In *Samson v. California,* 547 U.S. 843

---

[3] Morgan considers this statute to be extrinsic evidence and argues it may not be relied on in connection with a Rule 12(b)(6) motion to dismiss. (ECF No. 55). While generally true that no material outside the pleadings may be considered in ruling on a motion to dismiss, the Court is permitted to take judicial notice of public records. *Stahl v. U.S. Dep't of Agric.,* 327 F.3d 697, 700 (8th Cir. 2003).

(2006), the California statute at issue required parolees to "'agree in writing to be subject to search or seizure by a parole officer or other peace officer . . ., with or without a search warrant and with or without cause.'"   *Id.* at 846. The Supreme Court concluded a condition of release could "so diminish or eliminate a released prisoner's reasonable expectation of privacy that a suspicionless search by a law enforcement officer would not offend the Fourth Amendment."   *Id.* at 847. Regarding the expectation of privacy, the Court noted that parole was "an established variation on imprisonment" on which the statute imposed a clearly stated warrantless search condition.   *Id.* at 852.   Therefore, the Court "conclude[d] that petitioner did not have an expectation of privacy that society would recognize as legitimate." *Id.* at 852.   The Court further observed that the State "has an 'overwhelming interest' in supervising parolees because 'parolees . . . are more likely to commit future criminal offenses.'" *Id.* at 853 (quoting *Pennsylvania Bd. of Probation and Parole,* 524 U.S. 357, 365 (1998)).   The Court held "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee."   *Id.* at 857.

The Court finds *Samson* instructive. As a parolee, Morgan's expectation of privacy was severely diminished.   Morgan was living in housing provided by the state with a parole officer working at the facility.   Morgan's waiver of his Fourth Amendment rights was clearly stated and a condition of his parole.   When the second search occurred, Morgan had been arrested and was in custody.   Morgan had no legitimate expectation of privacy protecting him from a warrantless search at the behest of Officer Phaypanya. As no constitutional violation exists, Officer Phaypanya is entitled to qualified immunity as to the searches of Morgan's "person, place of residence, or motor vehicle."

6

**(B).   Search of Morgan's Cell Phone[4]**

Morgan also alleges Officer Phaypanya searched his cell phone. The statute does not, by its own terms, cover the search of digital devices.   Unsurprisingly, the Supreme Court has recognized that "modern cell phones . . . are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy."   *Riley v. California,* 573 U.S. 373, 385 (2014) (finding warrant needed to search cell phone in connection with a search incident to arrest).   Indeed, the Court stated that the "term 'cell phone' is itself misleading shorthand; many of these devices are in fact minicomputers that also happen to have the capacity to be used as a telephone. They could just as easily be called cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers."   *Id.* at 393. The Court's 2014 observation that "a significant majority of American adults now own such phones" remains true today. *Id.* at 385.

The Court recognized that "[c]ell phones . . .   place vast quantities of personal information literally in the hands of individuals.   A search of the information on a cell phone bears little resemblance [to a] physical search."   *Riley,* 573 U.S. at 386.   With respect to the privacy interests involved, the Court stated:

> The storage capacity of cell phones has several interrelated consequences for privacy.   First, a cell phone collects in one place many distinct types of information—an address, a note, a prescription, a bank statement, a video—that reveal much more in combination than any isolated record.   Second, a cell phone's capacity allows even just one type of information to convey far more than previously possible.   The sum of an individual's private life can be reconstructed through a thousand photographs labeled with dates, locations, and descriptions; the same cannot be said of a photograph or two of loved ones tucked into a wallet. Third, the data on a phone can date back to the purchase of the phone, or even earlier.   A person might carry in his pocket a slip of paper reminding him to call Mr. Jones; he would not carry a record of all his communications with Mr. Jones

---

[4] The search of the cell phone is not separately addressed by Officer Phaypanya.

for the past several months, as would routinely be kept on a phone.

*Id.* at 394-95.

The fact that as a parolee Morgan had "diminished privacy interests does not mean that the Fourth Amendment falls out of the picture entirely." *Riley,* 573 U.S. at 392. Parole is "an established variation on imprisonments" and "[t]he essence of parole is release from prison before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence." *Samson,* 547 U.S. at 850.

In *United States v. Jackson,* 866 F.3d 982, 985 (8th Cir. 2017), the Eighth Circuit found that a suspicionless search of a cell phone did not violate the Fourth Amendment. However, the facts of the case make it clearly distinguishable. The Eighth Circuit described federal supervised release as a "more severe punishment than parole and probation and involves the most circumscribed expectation of privacy." *Id.* (cleaned up). Jackson was on supervised release and required to reside in a residential facility and follow the rules of the facility. *Id.* In Jackson's case, the facility rules prohibited the possession of cell phones and provided that any property possessed within the facility was subject to search. *Id.* The Eighth Circuit concluded that "[g]iven Jackson's diminished expectation of privacy as a supervised releasee, and the clear notice that his cell phone was subject to search, Jackson did not enjoy an expectation of privacy in his cell phone that society would recognize as legitimate." *Id. Riley* was distinguished on the basis that it involved the privacy rights of an arrestee.

Here, the statutory waiver of Fourth Amendment rights, relied on by Officer Phaypanya, applies only to warrantless searches "of his or her person, place of residence, or motor vehicle at any time, day or night, whenever requested by the certified law enforcement officer or division

officer." Ark. Code Ann. § 16-93-106(a)(1). None of these terms "clearly or unambiguously encompasses [Morgan's] cell phone and the information contained therein." *United States v. Lara,* 815 F.3d 605, 610 (9th Cir. 2016) (determining the terms container and property in a probationer's Fourth Amendment waiver did not encompass a cell phone); *Petersen v. Buyard,* Case No. 1:20-cv-00954, 2022 WL 347602 (E.D. Cal. Feb. 4, 2022) (cell phone parole search is reasonable and proper only when it complies with the terms of a valid search condition). Therefore, taking all allegations of the Amended Complaint as true, the Court concludes that Morgan, as a parolee, retained an expectation of privacy in the contents of his cell phone that society is willing to recognize as legitimate. A plausible Fourth Amendment claim has been stated regarding the search of Morgan's cell phone by Officer Phaypanya.

The second prong of the qualified immunity analysis requires the Court to ask whether the law was clearly established at the time of the challenged conduct. The Supreme Court in *Riley* clearly established that a search warrant is necessary to examine the contents of a cell phone in the possession of an arrestee. In *Jackson,* the Eighth Circuit clearly established that a warrant was not necessary to search the contents of a cell phone of a person on supervised release which it described as a greater restriction than parole. However, in the Court's opinion, neither of these cases answer the precise question here – whether the cell phone of a parolee may be searched without a warrant. The expectation of privacy of a parolee is less than that of an arrestee but more than that of a person on supervised releasee. Finding the law not clearly established at the time of the challenged conduct, Officer Phaypanya is entitled to qualified immunity.

## IV.  CONCLUSION

For the reasons stated, it is recommended that Parole Officer Phaypanya's Motion to

Dismiss (ECF No. 45) be **GRANTED and all claims against Officer Phaypanya are DISMISSED.**

The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).   The failure to file timely objections may result in waiver of the right to appeal questions of fact.   The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this 16th day of December 2022.

*Christy Comstock*
_____
CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE