IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

KRISTOPHER MORGAN                                                    PLAINTIFF

v.                      Civil No. 5:22-cv-05130-PKH-CDC

DETECTIVE CHAD WILSON, Springdale Police Department;
DETECTIVE DANNY WRIGHT, Springdale Police
Department; DETECTIVE ROBERT NELSON, Springdale
Police Department; CLINT MAJORS, Director of Phoenix
Recovery Center; and NICK ROBBINS, Chief Executive Officer of
Returning Home                                                       DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights action filed by Plaintiff, Kristopher Morgan ("Morgan"), pursuant to 42 U.S.C. § 1983.   Morgan proceeds *pro se* and *in forma pauperis.*   Morgan is currently incarcerated in the Delta Regional Unit of the Arkansas Division of Correction.

The case is currently before the Court on a Motion for Judgment on the Pleadings (ECF No. 133) filed by Separate Defendant Clint Majors ("Majors"); a Motion for Summary Judgment (ECF No. 153) filed by Separate Defendant Nick Robbins ("Robbins"); and a Motion for Summary Judgment (ECF No. 163) filed by Detectives Wilson, Wright, and Nelson (collectively "the City Defendants").   Morgan has responded to the Motions.   (ECF Nos. 173-176, 184, 190, 207). Robbins filed a reply (ECF No. 208).   The City Defendants also filed a reply.   (ECF No. 204). The Motions are ready for decision.   Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable P.K. Holmes, Senior United States District Judge, referred the Motions to the undersigned for the purpose of making a Report and Recommendation.

1

## I.     MAJORS' MOTION FOR JUDGMENT ON THE PLEADINGS

### A.   The Facts as Alleged in the Amended Complaint[1]

On April 27, 2022, Morgan was living at Phoenix Recovery Center a/k/a Phoenix House, a transitional living facility licensed by the Arkansas Division of Community Correction.   (ECF No. 39 at 5).    Morgan says he was called into the office of Majors "for an incident."   *Id.*  Morgan alleges that Parole Officer Phaypanya[2] and Majors immediately started "taunting, threatening, and bullying" him.   *Id.*   Morgan indicates he was interrogated in a disrespectful manner and coerced into violating his own constitutional rights.   *Id.* at 5-6.    He then says Officer Phaypanya left the property for over an hour with his cell phone.   *Id.* at 5.   Morgan alleges Robbins, who was less than ten feet away and behind closed doors, did nothing to stop the constitutional violations and sided with Majors and Officer Phaypanya.   *Id.* at 6.   Morgan believes this conduct occurred because of his record as a sex offender and in light of a city ordinance that was being put into effect.   *Id.*   As a result of this incident, Morgan alleges he lost all his personal possessions, including his banking information, and lost his job.   *Id.*   Morgan contends that his progress towards becoming a productive citizen ended because of the search and his subsequent arrest.   *Id.*

On April 28, 2022, Morgan says Officer Phaypanya and Detectives Wilson, Wright, and Nelson, illegally searched and copied his cell phone at the Springdale Police Department ("SPD"). (ECF No. 41 at 1).   Morgan asserts that the warrant authorizing the search was not issued until the following day.   *Id.*   Morgan claims that Officer Phaypanya and Detectives Wilson, Wright,

---

[1] The Amended Complaint was filed in two parts.   (ECF Nos. 39 & 41).
[2] Officer Phaypanya has been dismissed from this lawsuit.   (ECF No. 90).

and Nelson "outright lied in the warrant application and have 2 stor[ies] in the Police Report."   *Id.*

Morgan says he has been incarcerated since his arrest and has lost all his worldly possessions; his banking information was copied; he has been threatened by the prosecution with an "obscene amount of prison time from the charges;" and he was unable to attend the funerals of his grandfather and mother.   (ECF No. 41 at 1).   At the time the Amended Complaint was filed, Morgan indicates he was a pretrial detainee who had been convicted in 2021.   (ECF No. 39 at 2).

As relief, Morgan seeks compensatory damages in the amount of 100 million dollars and punitive damages in the amount of 60 million dollars.   (ECF No. 41 at 4).   Additionally, he is requesting 500 acres of land of his choosing "tax free as long as [he] own[s] it."   *Id.*

### B.   Applicable Standard

Rule 12(c) of the Federal Rules of Civil Procedure states: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."   Rule 12(c) motions are reviewed under the same standards as Rule 12(b)(6) motions to dismiss.   *Ginsburg v. InBev NV/SA,* 623 F.3d 1229, 1233 n.3 (8th Cir. 2010).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of 'his entitle[ment] to relief' requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do.   Factual allegations must be enough to raise a right to relief above the speculative level.

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted).

The complaint must assert a claim that is plausible on its face.   *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).   A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged."   *Ashcroft,* 556 U.S. at 678.   The

3

Court "accept[s] the allegations contained in the complaint as true and draw[s] all reasonable inferences in favor of the nonmoving party.   Where we can infer from those factual allegations no more than a mere possibility of misconduct, the complaint must be dismissed." *Cole v. Homier Distrib. Co., Inc.,* 599 F.3d 856, 861 (8th Cir. 2010) (cleaned up).   While the Court will liberally construe a *pro se* plaintiff's complaint, the plaintiff must allege sufficient facts to support his claims.   *Stone v. Harry,* 364 F.3d 912, 914 (8th Cir. 2004).   "In addressing a motion to dismiss, [t]he court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Illig v. Union Elec. Co.,* 652 F.3d 971, 976 (8th Cir. 2011) (cleaned up).

### C.  Discussion

Majors moves for judgment on the pleadings arguing that: (1) in connection with ruling on Officer Phaypanya's motion to dismiss, the Court found that the Amended Complaint did not meet the federal pleading standards; (2) in that same ruling, the Court determined that the search did not violate the constitution; and (3) Morgan did not allege that Majors was a state actor.

The Court will begin the discussion with a short review of the ruling on Officer Phaypanya's Motion to Dismiss.   In ruling on Officer Phaypanya's Motion, the Court first found that the search of Morgan's person and place of residence did not violate the Constitution based on Morgan's execution of a valid warrantless search waiver and the existence of an Arkansas statute, Ark. Code Ann. § 16-93-106(a)(1)-(2), which provided for the warrantless search of probationers and parolees.   (ECF No. 69 at 6).   In short, no constitutional violation existed as Morgan had no legitimate expectation of privacy protecting him from a warrantless search of his person or place of residence at the behest of Officer Phaypanya.   *Id.*   As no constitutional

violation existed, Officer Phaypanya was entitled to qualified immunity on this claim.   *Id.*

Next, the Court noted the statute and waiver by their terms did not cover the search of digital devices.   (ECF No. 69 at 7).   Taking the allegations of the Amended Complaint as true, the Court concluded Morgan, as a parolee, retained an expectation of privacy in the contents of his phone that society was willing to recognize as legitimate.   *Id.* at 9.   Morgan had therefore stated a plausible Fourth Amendment claim regarding the search of his cell phone.   *Id.*   Moving to the second prong of the qualified immunity analysis, the Court concluded there was no clearly established law on the issue of whether the cell phone of a parolee could be searched without a warrant.   *Id.*   For this reason, Officer Phaypanya was entitled to qualified immunity.   *Id.*   *See* (ECF No. 90 adopting the report and recommendation in its entirety).

Majors errs in relying so heavily on the Court's ruling with respect to Officer Phaypanya. Officer Phaypanya's relationship and right to search Morgan were because Morgan was a parolee, who as a condition of parole had executed a warrantless search waiver, and was under Officer Phaypanya's direct supervision.   Majors' relationship to Morgan differs significantly.   Majors was not a parole officer or other law enforcement officer and therefore not entitled to rely on the warrantless search waiver.   Further, private individuals are not generally entitled to assert the defense of qualified immunity.   *Cf. Davis v. Buchanan Cty., Mo.,* 11 F.4th 604, 618-19 (8th Cir. 2021) (even if considered state actors, private for-profit medical care providers not entitled to assert the defense of qualified immunity), cert. denied, *Munger v. Davis,* 142 S. Ct. 777 (2022).

The Court does, however, agree that Morgan had made no allegation that Majors was directly involved in the search of his person or cell phone.   Instead, Morgan alleges Majors immediately started "taunting, threatening, and bullying" him about an incident; and Majors

interrogated Morgan in a disrespectful manner and coerced him into violating his own constitutional rights.   Morgan has sued Majors in both his official and individual capacities.

Section 1983 provides a cause of action for (1) the violation of a right secured by the Constitution and laws of the United States by (2) a person acting under color of state law.   *Yassin v. Weyker,* 39 F.4d 1086, 1089 (8th Cir. 2022).   "Only a state actor can face § 1983 liability." *Doe v. N. Homes, Inc.,* 11 F.4th 633, 637 (8th Cir. 2021).   In general, a private individual or entity does not act under color of law.   But there are limited circumstances in which a private individual or entity will be found to qualify as a state actor.   For example, "'when the private entity [or private individual] performs a traditional, exclusive public function,'" and "'when the government acts jointly with the private entity [or private individual].'"   *Id.* (holding private entity charged with housing juvenile in a corrections unit was a state actor) (quoting *Halleck v. Manhattan Cmty. Access Corp.,* ___U.S. ___, 139 S. Ct. 1921, 1928 (2019)).

"To assess state action, this Court answers two questions.   First, whether the claimed deprivation resulted from the exercise of a right or privilege having its source in state authority. Second, whether the party engaging in the deprivation may be appropriately characterized as a state actor."   *Robertson v. Dakota Boys & Girls Ranch,* 42 F.4th 924, 928 (8th Cir. 2022) (internal quotation marks and citations omitted).

Here, Morgan was paroled to the Phoenix Recovery Center, a transitional living facility owned by a private entity.   In contrast to a privately owned correctional facility, *Corr. Servs. Corp. v. Malesko,* 534 U.S. 61, 71-72 n. 5 (2001), or a private provider of services in a state prison, *Americans United for Separation of Church and State v. Prison Fellowship Ministries, Inc.,* 509 F.3d 406, 422-23 (8th Cir. 2007), the Phoenix Recovery Center merely provides a place to live

and services to parolees for relatively short periods of time.   This does not transform the facility into a state actor.   *See e.g., Smith v. Alternative Counseling Servs.,* Case No. 21-cv-0076, 2021 WL 492513, at *3 (E.D. Penn. Feb. 10, 2021)(halfway house, its executive director, and staff monitor, not acting under color of law absent sufficient facts to establish state action); *Veeder v. TRI-CAP,* Case No. 1-cv-11690, 2020 WL 1867212, at *5 (E.D. Mich. Jan. 30, 2020), *report and recommendation adopted,* 2020 WL 967481 (E.D. Mich. Feb. 28, 2020)(where "private non-profit entities [are] providing services to parolees and probationer[,]" federal district courts regularly find that such entities are not considered state actors); *Porter v. Game,* Case No. 19-cv-1048, 2020 WL 127850, at *2 (E.D.N.Y. Jan. 9, 2020)("Courts have consistently held that drug treatment facilities that treat individuals pursuant to a condition of parole are not performing a public function")(cleaned up); *but see Ford v. Dismas Charities, Inc.* Case No. 3:96-cv-471-S, 1999 WL 335342222 (W.D. Ky. Sept. 29, 1999)(deciding a halfway house could be sued under § 1983 because its actions with regard to the plaintiff were in relation to his court-ordered confinement there).   Morgan makes no allegation regarding Phoenix Recovery Center's contractual relationship with the State of Arkansas; Morgan does not allege he was committed to Phoenix Recovery Center pursuant to a court order; nor does Morgan allege Phoenix Recovery Center is a private entity acting under color of state law.   Therefore, no official capacity claim against Phoenix Recovery Center or Majors has been stated.

The Court turns to the individual capacity claim against Majors.   A private party may be characterized as a state actor if he willfully participates in joint activity with the state of its agents. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152 (1970).   "Under § 1983, a plaintiff must establish not only that a private actor caused a deprivation of constitutional rights, but that the private actor

willfully participated with state officials and reached a mutual understanding concerning the unlawful objective of a conspiracy." *Dossett v. First State Bank,* 399 F.3d 940, 951 (8th Cir. 2005). Morgan alleges he was called into Majors' office about "an incident" and the two argued. Morgan does not allege Majors was involved in any search of his person, property, or place of residence. The Amended Complaint contains no allegations that Majors was involved in any way with the seizure or search of the cell phone. In fact, the opposite is alleged, Morgan alleges Officer Phaypanya took the cell phone from his pocket, demanded the pass code pattern, and then left the property with the phone. (ECF No. 39 at 6). Even if the Court assumes Majors was involved in coercing Morgan to provide the pass code pattern, there is no allegation Majors took possession of the phone or searched it. There is no allegation that Majors acted under color of law. The remaining searches of the cell phone are alleged to have occurred by Officer Phaypanya and Detectives Wilson, Wright, and Nelson. (ECF No. 41 at 1).

In his response to the Motion, Morgan relies on a property receipt for the phone issued by Detective Wilson and signed by Majors to establish Majors had both possession of the cell phone and the pattern passcode. (ECF No. 184 at 1) (citing ECF No. 77-1 at 22). Morgan asserts Majors may have stolen files or downloaded items from the phone. *Id.* Morgan questions how Majors gained possession of the phone. These allegations do not appear in the Amended Complaint. Importantly, even if the allegations were in the Amended Complaint, the allegations of possession are insufficient to establish Majors was acting under color of law. In short, the allegations are insufficient to establish Majors was a state actor subject to liability under § 1983.

For these reasons, Majors' Motion for Judgment on the Pleadings (ECF No. 133) should be granted and both the individual and official capacity claims against him be dismissed.

## II.   ROBBINS' MOTION FOR SUMMARY JUDGMENT

### A.   The Facts as Set Forth in the Summary Judgment Record

In 1997, when Morgan was seventeen years old, Morgan was charged with statutory rape in Travis County, Texas.   (ECF No. 165-1 at 18-20).   As far as he knew, he was "outside" the act requiring sex offenders to register in Texas.   *Id.* at 20.   Morgan states he arrested and charged before the act was adopted but sentenced after it was enacted.   *Id.*

In 2018 or 2019, Morgan was charged with aggravated assault in Panama City, Florida. (ECF No. 165-1 at 15-16).    Morgan asserts this was the first time he learned he was required to register as a sex offender.   *Id.*   He was placed on probation in Florida because of the aggravated assault charge.   *Id.* at 16.   He was again arrested in Florida on a charge of failure to register as a sex offender.   *Id.*   Morgan spent approximately a month or two in jail and then was released.   *Id.* at 17.   At that time, Morgan moved to Arkansas because he had family here Id. at 15 & 21.   He did not obtain permission to move to Arkansas from his probation officer and did not register in Florida.   *Id.* at 17-19, 21.

On January 12, 2021, Morgan was arrested for failure to register as a sex offender by the Fayetteville Police Department.   (ECF No. 165-1 at 15 & 28).   Morgan was incarcerated on a three-year sentence until his release on parole on February 21st or 22nd, 2022.   *Id.* at 28; *see also* (ECF No. 165-5 (sentencing order)).   He paroled out to the Phoenix House.   (ECF No. 165-1 at 29).   A couple of days after he paroled out, Morgan went to the SPD and registered.[3]   *Id.* at 40. Morgan did the initial paperwork with Detective Wright, but Detective Wilson came to assist with

---

[3] Records indicate Morgan completed a sex offender form reporting his address as Phoenix House on February 21, 2022.   (ECF No. 165-2 at 9-10).

the fingerprinting.  *Id.* at 40-41.  Morgan did not indicate he had access to any devices with Internet capability and listed no email addresses or social media account information.  (ECF No. 165-2 at 10).

On March 7, 2022, Morgan updated his paperwork when he obtained his phone. [4]  (ECF No. 165-2 at 12).   Morgan listed an email address sailorsink@gmail.com, and social media accounts—Facebook, Snapchat, and TikTok.  *Id.*  At the time, Detective Wright took a picture of the phone and obtained the serial number and IMEI number.  (ECF No. 165-1 at 43).   Morgan provided the paperwork to his parole officer, Officer Phaypanya.  *Id.* at 44.  After that, Morgan understood he did not have to re-register until May 19th.  *Id.* at 42.  Morgan had no contact with Detective Nelson either then or later.  *Id.* at 45.  However, Detective Nelson is named as a Defendant because he was the officer who later physically copied the contents of Morgan's phone. *Id.*

Morgan's conditions of parole required him to work 40-hours a week and adhere to the stipulations of the Phoenix House which required him to do its program work.  (ECF No. 165-1 at 29).  Morgan was required to undergo random drug screens—urinalysis (UA).  *Id.* at 30. Morgan was also required to perform daily chores and attend four-hours of classes each day.  *Id.* Officer Phaypanya had an office on the premises of Phoenix House.  *Id.*  Morgan had a standard search waiver on file.  *Id.*

On approximately April 27, 2022, Morgan received notice he was to give a UA.  (ECF No. 165-1 at 31).  Morgan testified he waited from 8:00 am to 3:00 pm to take the test but no one

---

[4] On March 7, 2022, Morgan reported he had obtained a cell phone, used the email address sailorsink@gmail.com and social media apps TikTok, Facebook, and Snapchat.  (ECF No. 165-2 at 5 & 11-12).

was at the facility to perform the test.   *Id.*   Robbins refused stating it was not his job.   *Id.* at 31-32.   Morgan reported to work and at 2:00 a.m. when he returned to Phoenix House, he took the test and passed.   *Id.* at 32.   At that time, Morgan was told he had to take his drug test when asked to do so and had a sanction against him for not taking it the prior morning.   *Id.*   Morgan protested because no one had been there to administer the test.   *Id.*

The following morning, Morgan was called into Majors' office with Officer Phaypanya present.   (ECF No. 165-1 at 32).   He was told he was going to be given a sanction of five hours restriction, five hours of community service, a five-page essay, and five days without his phone for failure to take the drug test.   *Id.* at 31.   When Morgan protested, Officer Phaypanya "got pissed off."   *Id.*   At some point, Officer Phaypanya took Morgan's phone, a Galaxy AO2s, out of his pocket.   *Id.* at 33.   The phone was on a prepaid plan with Straight Talk.   *Id.*   Morgan purchased it the day after he was released on parole.   *Id.*   After Officer Phaypanya threatened Morgan for about five-minutes, Morgan gave him the pattern to unlock the phone.   *Id.* at 34.   Specifically, Officer Phaypanya was threatening to send Morgan back to prison.   *Id.*   Both Officer Phaypanya and Majors had been "after" Morgan constantly for about an hour "before [he] finally told them what everything was."   *Id.*   Officer Phaypanya went through Morgan's phone pulling up downloaded apps and stated the apps that were not registered.   *Id.*   Morgan contended he had registered the apps and told Officer Phaypanya "take his ass" down to the SPD and look.   *Id.*   At this point, Morgan states he was handcuffed to the chair and sat in a dark room for an hour and a half or two.   *Id.*

Officer Phaypanya eventually came back in the room with print outs and highlighted an old email address, SailorsInkAquaPonics.@gmail.com and an app, Instagram, that were not

registered.   (ECF No. 165-1 at 35 & 51).   Morgan indicated he had not used for the email for four years and insisted Instagram messages come through Facebook Messenger.   *Id.* at 35.   Officer Phaypanya placed Morgan under arrest for a parole violation and transported him to the Washington County Detention Center ("WCDC").   *Id.* at 14 & 36.   Morgan has not seen his phone since.   *Id.*

Officer Phaypanya contacted Detective Wright who was off duty.   (ECF No. 165-2 at 3).   Detective Wright and relayed the information to Detective Wilson "who confirmed Morgan was in violation."   *Id.*   According to Detective Wright, Officer Phaypanya was to keep the phone until Detective Wilson "could pick it up for me along with the passcode."   *Id.*   A property receipt indicates the phone and a note with the pass code pattern was picked up by Detective Wilson at Phoenix House at 11:09 am on April 28, 2022.   *Id.* at 16.   The receipt is signed by Majors.   *Id.*

Detective Wright prepared an affidavit for a search warrant.   (ECF No. 165-2 at 15).   The affidavit indicates the phone was being held at the Criminal Investigation Division of the SPD. *Id.*   Detective Wright indicated he had been contacted by Officer Phaypanya about Morgan being discharged from Phoenix House for failure to complete a required drug screening.   *Id.*   Officer Phaypanya reported there was an active warrantless search waiver[5] and in viewing Morgan's phone had found he failed to disclose information to the sex offender registry including an email account and social media accounts.   *Id.*   Officer Phaypanya had seized the phone.   *Id.*

District Judge Jeff Harper signed the search warrant for the phone at 9:41 am on April 29, 2022.   (ECF No. 165-2 at 14).   The warrant was executed by Detectives Wright and Nelson.   *Id.* at 3.   Detective Nelson made a digital copy of the phone using a Cellebrite program.   *Id.*   When

---

[5] Morgan was required to sign the waiver as a condition of his parole.   (ECF No. 165-3 at 1).

searching through the phone and records, Detective Wright "confirmed … [Morgan] had been using Instagram, Tumblr, and Duo . . . and had a second email address he had not disclosed: sailorsinkaquanponics@gmail.com." *Id.*

The Cellebrite extraction report indicates the extraction of "advanced logical" began at 10:22:55 am and ended at 12:27:25 pm; extraction of the file system began at 9:56:26 am and ended at 10:21:10 am.[6]   (ECF No. 165-4 at 2).   The report captured calendar entries, the call log, contacts, instant messages, locations, timeline, data files including archives, audio, configuration, databases, images, shortcuts, text, uncategorized, and videos.   *Id.* at 3.

Morgan was charged with failing to comply with sex offender registration and reporting requirements in violation of Ark. Code Ann. § 12-12-904.   (ECF No. 165-2 at 2 & 4).   The arrest details for the charge indicates the arrest type as "On-View Arrest."   (ECF No. 77-1 at 27).[7]   The arrest date is listed as April 29, 2022.   *Id.*   This charge was eventually dropped, and Morgan was incarcerated on the parole violation.   (ECF No. 165-1 at 37 & 55).

Morgan has a joint bank account at Arvest and associated credit-builder credit card with his sister.   (ECF No. 165-1 at 13-14 & 48-49).   There was $1600 to $1800 in the account when he was arrested.   *Id.* at 50.   The banking information was on the phone.   *Id.* at 13.   Morgan wants to make sure the banking information was not copied, and nothing was done to the account.

---

[6] Morgan questions the fact that the extraction report indicates it was prepared on October 14, 2022.   (ECF No. 176 at 6) ("How did Det. Wright on 4-29-22 'examine the extracted cell phone data' that was not even created until 10/14/22").   Morgan is confusing the date the extraction report was prepared in written form with the date of the actual extraction.   The report clearly states that the data was extracted on April 29, 2022.   (ECF No. 165-4 at 2).

[7] This document filed on December 29, 2022, is contained in the City Defendants' response to Morgan's Motion for Summary Judgment.   However, Morgan cites to it and relies on it in his response to the City Defendants' Motion for Summary Judgment.   (ECF No. 179 at 1).

*Id.* at 47-48.   Morgan has no knowledge that any funds are missing.   *Id.*   However, he has not communicated with his sister since he was incarcerated in the WCDC.   *Id.* at 47.   At that point, she indicated she was using the funds in the account to pay rent because her fiancé was ill and unable to work. *Id.*

Morgan also had a Chime account and a Cash App account with small amounts of money in them.   (ECF No. 165-1 at 49-50).   He had social media accounts with TikTok, Instagram, Facebook, and Snapchat.   *Id.* at 51.   Morgan testified Snapchat uses Facebook Messenger.   *Id.*

Prior to his incarceration, in addition to working, Morgan operated a research and development company related to marine engineering and outer space technology.   (ECF No. 165-1 at 52).   Morgan has bachelor's degrees in graphic design, marine engineering, culinary arts, and a certificate in photography.   *Id.* at 53.

Morgan testified he agreed to a 90-day parole revocation but when he arrived at the ADC was told he was on a six-month parole violation.   (ECF No. 165-1 at 37).   Although currently eligible for parole, Morgan testified he is not going to attempt to parole again and will remain incarcerated until his "flat-date" in January of 2024.   *Id.* at 55.

By affidavit, Robbins indicates he is the Chief Executive Officer of Returning Home, Inc., a not-for-profit entity.   (ECF No. 153-1 at 1).   Robbins states he is not "an employee, owner, officer or agent of, nor am I in any other way affiliated" with Phoenix House.   *Id.*   Returning Home has offices in the same building as Phoenix House.   (ECF No. 153-1 at 1).   Both are separate businesses and in separate offices.   *Id.* at 2.   According to Robbins, numerous other businesses and not-for-profit organizations are officed in and operate out of the same building. *Id.*

Robbins states he was in his office at the time of the events giving rise to Morgan's claims. (ECF No. 153-1 at 1).   Robbins asserts he "did not witness any of the alleged events occur, nor did I hear same occur.   I was not aware of any of the events at issue in this suit until after the fact." *Id.*

According to Robbins:

I have no supervision and/or control over any of the individuals involved in the alleged acts giving rise to Plaintiff's cause of action, nor did I instigate or have input in such events occurring.   At no time did I have supervision over Plaintiff, nor was I involved in and/or play any role in [his] being allegedly deprived of his property, arrested, and/or "tortured" as he alleges in his filings with this court.

*Id.*

Morgan maintains Robbins has downplayed his role at Phoenix House.   (ECF No. 173 at 1-2).   Morgan asserts that Robbins provides classes five-days a week, four hours a day, that are mandatory.   *Id.* at 1.   According to Morgan, Robbins does the roll call at the classes and if you miss, you are sanctioned and if refuse to attend classes, you are discharged from the Phoenix House and your parole is revoked.   *Id.* at 2.   Morgan agrees Robbins was not present in the Majors' office during the confrontation.   (ECF No. 165-1 at 57).   However, Morgan says Robbins was in his office and did nothing.   (ECF No. 173 at 2).

Morgan states the property has state of the art audio/video surveillance and output goes "to the GIANT monit[o]r and computer on Robbins desk.   So, he could watch the events unfold from the comfort of his own desk."   *Id.* at 3.   However, during his deposition, Morgan testified he could only assume there was a camera in Majors' office.   (ECF No. 165-1 at 57).   Morgan maintains Robbins was "fully aware of the events and results prior to the event taking place." (ECF No. 173 at 3).

### B.  Applicable Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists."  *Nat'l Bank of Comm. v. Dow Chem. Co*., 165 F.3d 602, 607 (8th Cir. 1999).   A fact is "material" if it may "affect the outcome of the suit."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586.   "They must show there is sufficient evidence to support a jury verdict in their favor."  *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)).   "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment."  *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).   "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### C.  Discussion

Robbins moves for summary judgment arguing that the sole claim asserted by Morgan is a negligence claim.   Robbins maintains he owed no legal duty to Morgan.   In the absence of a legal

duty, Robbins asserts he cannot be held responsible for failing to intervene in the events which allegedly caused a violation of Morgan's constitutional rights.

In opposition, Morgan contends that Robbins had a relationship with Phoenix House; was aware of the events as they transpired; conspired with the Majors and Officer Phaypanya to have Morgan removed from Phoenix House; and had a duty to intervene in the constitutional violations.

### (1).   Duty to Intervene

While Robbins believes the Amended Complaint solely asserts a negligence claim against him, a failure to intervene claim may exist under § 1983.   "In some instances, a state actor's failure to intervene to prevent the deprivation of civil rights, or failure to provide certain protective services, may constitute a violation of constitutional rights for purposes of Section 1983." *Jones v. Buscemi,* Case No. 4:17-cv-02875, 2021 WL 4552151, *2 (E.D. Mo. Sept. 30, 2021) (citing *Sanchez v. City of Chicago,* 700 F.3d 919, 928 (7th Cir. 2012)).[8]

The duty exists, however, only if Robbins was a state actor.   While Morgan makes the general assertion that Robbins was aware of the events occurring in Majors' office and conspired with Majors and Officer Phaypanya to have him removed from Phoenix House, these assertions are not supported by the record.   Robbins states in his affidavit that he was unaware of what was occurring in Majors' office until after the events occurred.   Morgan testified in his deposition that he could only assume that there was a camera in Majors' office.   Morgan then asserts Robbins had the capability to access audio and video from all cameras in the facility.   This falls far short of establishing Robbins was a willful participant in the alleged constitutional violations.   There is

---

[8] In connection with law enforcement officers, the Eighth Circuit has limited the constitutional duty to intervene to cases involving excessive force.   *See e.g., Livers v. Schenck,* 700 F.3d 340, 360 (8th Cir. 2012).

no genuine issue of material fact as to whether Robbins was a state actor.   Robbins is entitled to summary judgment on this claim.

### (2).  Negligence

In *Hill v. Wilson,* 224 S.W.2d 797 (Ark. 1949), the Arkansas Supreme Court explained that negligence is a "relational concept."   *Id.* at 800.   "The concept of actionable negligence is relational because an act is never negligent except in reference to, or toward, some person or legally protected interest."   *Id.*   The court defined a negligent act as "one from which an ordinary prudent person in the actor's position—in the same or similar circumstances—would foresee such an appreciable risk of harm to others as to cause him not to do the act, or to do it in a more careful manner."   *Id.*   In other words, "[t]o be negligent a person must be in a position to realize that his conduct involves a hazard to others."   *Hartsock v. Forsgren, Inc.,* 365 S.W.2d 117, 118 (Ark. 1963).

"The question of the duty owed to the plaintiff alleging negligence is always one of law and never one for the jury."   *Mans v. Peoples Bank of Imboden,* 10 S.W.3d 885, 888 (Ark. 2000). If no duty exists, the negligence claim fails.   *Id.*   "Duty is a concept which arises out of the recognition that relations between individuals may impose upon one a legal obligation for another."   *Id.*

Robbins' sworn statement is that he "did not witness any of the alleged events occur, nor did [he] hear the same. . .. [He] was not aware of any of the events at issue in this case until after the fact."   (ECF No. 153-1 at 2).   As noted above, Morgan has only offered a supposition that there was a camera in Majors' office and Robbins had access to audio and video recordings from the camera.   Morgan's suppositions are insufficient to establish the existence of a legal duty.

18

Moreover, Robbins was not in a position to realize his conduct involved a hazard to Morgan.   For these reasons, Robbins should be granted summary judgment in his favor.

### III.   CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

As the statement of the facts established by the summary judgment record and summary judgment standard are set forth above, they will not be repeated here.[9]   The City Defendants contend they are entitled to summary judgment on the following grounds:   (1) the seizure and search of the phone was reasonable under the Fourth Amendment; (2) the warrant was supported by sufficient probable cause; (3) the warrant application did not contain false statements; (4) they are entitled to qualified immunity; and (5) there is no basis for official capacity liability.

### A.   The Seizure of the Phone[10]

The Fourth Amendment protects"'[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search and seizures.'"   *Caniglia v. Storm,* ___U.S. ___, 141 S. Ct. 1596, 1599 (2021) (quoting *Florida v. Jardines,* 569 U.S. 1, 6 (2013)). A seizure "occurs when there is some meaningful interference with an individual's possessory interests."   *United States v. Jacobsen,* 466 U.S. 109, 113 (1984).   Here, Morgan's cell phone was seized by Officer Phaypanya who indicated it contained evidence that Morgan had failed to adhere to the sex offender registry disclosure requirements.   The following day, the phone was turned over to Detective Wilson, apparently by Majors as he signed the property receipt, and then

---

[9] No affidavits were submitted by any of the City Defendants.   Their exhibits were included in the summary of the record.

[10] In his various responses and replies, Morgan argues his arrest and incarceration in the WCDC was illegal.   *See e.g.,* (ECF No. 175).   However, he was arrested by Officer Phaypanya not the City Defendants.   He was also taken to the WCDC and booked in by Officer Phaypanya.

a search warrant application was made to access the contents of the phone.[11]   Morgan had been

arrested by Officer Phaypanya and taken to the WCDC. "Where law enforcement authorities have

probable cause to believe that a container holds contraband or evidence of a crime, but have not

secured a warrant, the Court has interpreted the [Fourth] Amendment to permit seizure of the

property, pending issuance of a warrant to examine its contents, if the exigencies of the

circumstances demand it or some other recognized exception to the warrant requirement is

present."   *United States v. Place,* 462 U.S. 696, 701 (1983) (when officer's observations lead him

to believe luggage contains narcotics, the officer is permitted to briefly detain the luggage and

investigate).   Since Morgan was in jail and his phone had already been seized by Detective

Wilson, the City Defendants retention of the cell phone "while [they] applied for a search warrant

did not meaningfully interfere with [Morgan's] possessory interests."   *United States v. Clutter,*

674 F.3d 980, 984 (8th Cir. 2012).

Morgan emphasizes that the property receipt for the phone was signed by Majors.   There

could be many explanations for this, but it is undisputed that the phone Detective Wilson took

possession of was Morgan's.   At most, Morgan's arguments would have merit in connection with

a motion to suppress the evidence as an opportunity may have existed for the phone to have been

tampered with.   *See e.g., Scott v. Jones,* 915 F.2d 1188, 1190 (8th Cir. 1990)("The question of

whether or not a chain of custody has been shown is one of state law"); *Plymale v. Warden, Ross*

*Corr. Inst.,* Case No. 2:17-cv-832, 2019 WL 1455218, *2 (S.D. Ohio Apr. 2, 2019)("Inaccuracies

---

[11] Morgan argues the City Defendants failed to comply with Ark. R. Crim. Pro. 15.4 dealing with
the custody of seized items and reports of the seizure.   However, a violation of a state rule of
criminal procedure does not equate to a constitutional violation.   *See e.g., Marler v. Missouri State*
*Bd. of Optometry,* 102 F.3d 1453, 1457 (8th Cir. 1996) ("[A] violation of state law, without more,
does not state a claim under the federal Constitution or § 1983." (citation omitted)).

in the chain of custody of evidence are not controlled by the Constitution in any way");  *Lyles v. Reynolds,* Case No. 4:14-cv-1063, 2016 WL 14455091, *15 (D.S.C. Jan. 1, 2016)("Petitioner's chain of custody claim does not present a matter arising under the United States Constitution or federal laws").

No constitutional violation is stated against the City Defendants based on their taking possession of the phone after it was seized by Officer Phaypanya.  The City Defendants are entitled to summary judgment on this claim.

### B.   Search Prior to Issuance of Warrant

The City Defendants acknowledge that the Amended Complaint contains a claim that the search and copying of the phone's contents occurred before the search warrant was signed by District Judge Harper.  (ECF No. 164 at 4).  Defense counsel simply states the phone was never examined prior to issuance of the search warrant.  *Id.* at 7.  The City Defendants do not further address this issue.

Morgan contends the evidence he was provided by the City Defendants on a flash drive (the Cellebrite Extraction Report and copies of the contents of his phone) show that 1100 files were transferred from the cell phone beginning on April 28, 2022, at 9:06 am until 1:36 pm, and again at 2:22 pm to 3:10 pm.  (ECF No. 190 at 3).  A screen shot was also taken at 3:10 p.m. The property receipt shows Detective Wilson took possession of the phone at 11:09 am on April 28th.  (ECF No. 165-2 at 16).  The search warrant was not issued until April 29, 2022, at 9:41 am.  *Id.* at 14.  Summary judgment will be denied, and this claim will remain for later resolution.

### C.   The Warrant Application

"The Fourth Amendment requires that warrants to search be supported by probable cause."

*United States v. Mayweather,* 993 F.3d 1035, 1040 (8th Cir. 2021).   Issuance of a warrant requires a "showing of probable cause to believe that the legitimate object of a search is located in a particular place."   *Steagald v. United States,* 451 U.S. 204, 213 (1981).   "The court must make a 'common-sense-decision' based on the totality of the circumstances set forth in the affidavit as to whether 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"   *United States v. Skarda,* 845 F.3d 370 (8th Cir. 2016) (quoting *Illinois v. Gates,* 462 U.S. 213, 238 (1983)).

Morgan maintains there were false statements in the warrant affidavit and certain facts were omitted. In *Franks v. Delaware,* 438 U.S. 154 (1978),[12] the Supreme Court held had that a defendant may challenge the veracity of a sworn statement used by police to procure a search warrant.   As discussed by the Eighth Circuit in *Mayweather*:

> A defendant may only receive a *Franks* hearing . . . after making a substantial preliminary showing that the warrant's issuing judge relied on statements in an affidavit that were false or were omissions made knowingly and intentionally or with reckless disregard for the truth.   This substantiality requirement is not met lightly and requires a defendant to offer specific allegations along with supporting affidavits or similarly reliable statements.   A mere allegation standing alone is not enough.   Allegations of negligence or innocent mistake are insufficient.
>
> Additionally, the defendant must . . . show that the alleged false statement or omission was necessary to the finding of probable cause.

*Mayweather,* 993 F.3d at 1044 (quotation marks and citations omitted).   To recklessly disregard the truth, an affiant "must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information."   *United States v. Reed,* 921 F.3d 751, 756 (8th Cir. 2019) (cleaned up). Further, recklessness can be inferred from an omission "when

---

[12] The *Franks* analysis is applied in civil rights actions.   *See e.g., Morris v. Lanpher,* 563 F.3d 399 (8th Cir. 2009).

the material omitted would have been clearly critical to the finding of probable cause." *Id.* Every statement in an affidavit need not be absolutely truthful; instead, "it is to be truthful in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Franks,* 438 U.S. at 155-56.

In pertinent part, the warrant affidavit provides:

Kristopher Morgan is a level 2 sex offender.   He resides at the Phoenix Recovery House.   I was contacted by Parole and Probation Officer Yosida Phayphanya (sic) about Morgan being discharged from the facility for failure to complete the required drug screening.   Morgan was in Officer Phaypanya's office and has an active Warrantless Search Waiver on file.   Officer Phaypanya was looking at Morgan's phone and discovered he had failed to disclose required information for the Sex Offender Registry.   He had an email account he had not disclosed and social media accounts he had not disclosed.   Based upon this information I arrested Morgan for Failure to comply with the registration and reporting requirements.   Officer Phaypanya seized Morgan's phone and it was recovered from him until such time that I could execute this search warrant.

(ECF No. 165-2 at 15).

Morgan maintains the affidavit has the following false statements and/or material omissions:[13]

(1)    The statement that Morgan failed to complete the required drug screening. Morgan contends this is false as he attempted to complete the drug screening, but no employee was available to conduct the UA.

(2)    There is no mention of Officer Phaypanya taking the phone and demanding the passcode.

(3)    The statement that Morgan was in Officer Phaypanya's office.   Morgan asserts it

---

[13] Morgan also points to "lies" and "omissions" in Detective Wright's case narrative contained in the police reports.   However, this is not relevant to the issue of whether the warrant was supported by probable cause.

is undisputed that the confrontation took place in Majors' office.

(4)     The statement that Detective Wright arrested him.   Morgan contends it is undisputed that he was arrested by Officer Phaypanya and taken to the WCDC.

(5)     The statute at issue Ark. Code Ann. 12-12-904, does not require the reporting of email addresses or social media accounts.

(6)     The statement that the phone was recovered from Officer Phaypanya.   Morgan contends the statement omits the information that the chain of custody was violated when Officer Phaypanya turned the phone over to Majors.[14]   (ECF Nos. 176 & 190).

 With respect to Morgan's first point, and whether rightly or wrongly, Morgan was in fact discharged from Phoenix House based on his failure to undergo a drug screen.   The statement in the affidavit is not false and conveyed the information provided to Detective Wright by Officer Phaypanya.   There is no record evidence suggesting Detective Wright did not believe the information to be truthful or recklessly accepted the information as true.   *See e.g., Mayweather,* 993 F.3d at 1043 ("A mere allegation standing alone is not enough") (cleaned up).

Morgan's second point is the omission from the affidavit of the fact that Officer Phaypanya took Morgan's phone and demanded his passcode.   The affidavit does state Morgan had an active warrantless search waiver on file and that Officer Phaypanya was "looking at" Morgan's phone. There is nothing in the record to suggest that Detective Wright knew anything about the alleged coercion Morgan faced prior to giving Officer Phaypanya his pass code pattern.   Neither is there

---

[14] As chain of custody issues arise in the context of the weight or admissibility of evidence, they are generally not relevant to a *Franks* analysis.   *See e.g., Collier v. United States,* Case No. 3:16-cr-194-1, 2021 WL 4557603, *4 n.1 (D.N.D. Oct. 5, 2021).   Moreover, probable cause may be established by evidence that may not be admissible at trial to prove an accused's guilt.   *Draper v. United States,* 358 U.S. 307, 311-312 (1959).

anything suggesting Detective Wright had any reason to believe the waiver did not cover digital devices.   In short, there is no evidence Detective Wright knowingly or intentionally included false statements in the affidavit or omitted information with reckless disregard for the truth.   *See e.g., United States v. Reinholz,* 245 F.3d 765, 774 (8th Cir. 2001)(Two showings are required with respect to omissions of fact, (1) that the facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading; and (2) that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause).

Morgan's third point that he was in Majors' office and not Officer Phaypanya's is immaterial to the issue of whether probable cause existed.   Furthermore, both offices were in the same building.

Morgan's fourth point was that he was arrested by Officer Phaypanya not Detective Wright.   According to Detective Wright's records, he charged Morgan with failing to comply with the registration and reporting requirements prior to writing the affidavit.   (ECF No. 165-2 at 3). Detective Wright completed his preliminary report to the prosecutor on April 29, 2022, listing the arrest location as the WCDC at 8:30 am.   *Id.* at 4.   The search warrant affidavit was completed at 9:41 am.   Regardless of who initially arrested him, Morgan was under arrest and in custody at the WCDC.   In addition to Morgan already having been charged with a parole violation, Detective Wright had completed all documents necessary to charge Morgan with violation of the registration and reporting requirements and the documents reflect an "on-view" arrest was performed.   Under these circumstances, the fact that Detective Wright used the term "arrested" rather than "charged" does not suggest intentional or reckless false statements on his part.

Morgan's fifth point is that the statute cited by Detective Wright, Ark. Code Ann. § 12-12-

25

904 does not mention Internet or social media usage.   Section 12-12-904(a)(1)(A)(i) provides it is a class C felony for a person to fail to register or verify registration in **compliance with the subchapter**.   Section 12-12-906 requires a sex offender to provide registration verification for: all computer or other devices with Internet capability; all email addresses used; and all social media account information.   Ark.  Code  Ann.  §  12-12-906(h)(3)(O-P  &  T).  The  sex  offender acknowledgement form Morgan signed included the requirement that Morgan disclose, among other things, "email, social network information."   (ECF No. 165-2 at 6, ¶ 2).   The forms Morgan completed also contained areas to report this information.   *Id.* at 12.   Morgan's argument is without merit.   Morgan was legally required to report this information; there was clear evidence Morgan failed to report an email address and social media accounts.

Morgan's final point regarding the veracity of the affidavit is that Detective Wright stated Morgan's cell phone was "seized" by Officer Phaypanya and "recovered from him."   Morgan points out the property receipt was signed by Majors which establishes he had possession of the phone on April 28, 2022, when it was obtained by Detective Wilson.   While the parties have engaged in discovery in this case, there is no explanation in the summary judgment record of why the property receipt was signed by Majors.

More importantly, there is no evidence in the record that establishes Detective Wright was even aware, at the time he completed the affidavit, of the fact that Majors apparently had possession of the phone when it was collected by Detective Wilson.   It is undisputed that Officer Phaypanya seized the phone, and the phone was in the possession of the SPD when the affidavit was executed.

Viewing the facts in the light most favorable to Morgan, even if the Court assumes

26

Detective Wright deliberately or recklessly falsified the statement that the phone was recovered from Officer Phaypanya, when this statement is set aside there remains sufficient content in the warrant affidavit to support a finding of probable cause. *Williams v. City of Alexander, Ark.,* 772 F.3d 1307, 1311 (8th Cir. 2014). The essential facts remain true—Morgan was a registered sex offender; he was on parole; he had an active warrantless search waiver; Officer Phaypanya discovered, by viewing Morgan's phone, that he failed to disclose an email account and social media accounts as he was required to do so under Arkansas law; Officer Phaypanya seized the phone; and Officer Phaypanya disclosed this information to Detective Wright. The facts establish probable cause for the issuance of a warrant.

Morgan's reliance on the fact that this charge—failure to comply with the reporting requirement—was ultimately dismissed is misplaced. (ECF No. 190 at 9-10) ("dismissing charges against me proves illegal arrest, incarceration as well as kidnapping and criminal syndicate from the Defendants in this case"). Criminal charges are dismissed for numerous reasons. One reason may have been that Morgan was being returned to the ADC on the parole revocation charge. Morgan states the dismissal occurred at the request of the State; therefore, it does nothing to establish that the charge was unconstitutional.[15]

---

[15] To the extent Morgan's Amended Complaint can be read to be asserting a malicious prosecution claim, it fails. The Eighth Circuit has held that "[i]f malicious prosecution is a constitutional violation at all, it probably arises under the Fourth Amendment." *Harrington v. City of Council Bluffs, Iowa,* 678 F.3d 676, 679 (8th Cir. 2012) (citing *Albright v. Oliver,* 510 U.S. 266, 271 (1994) (plurality opinion)). Such a claim may exist "where law enforcement officers go beyond mere prosecution without probable cause and fabricate evidence in order to 'falsely formulate a pretense of probable cause.'" *Id.* at 680 (quoting *Moran v. Clarke,* 296 F.3d 638, 647 (8th Cir. 2002)). Morgan admitted in his deposition that he did not report the old email account or social media accounts he believed were part of Facebook. Clearly, no malicious prosecution claim exists under the circumstances presented.

27

Morgan's overarching claim is that there was no probable cause for the search warrant because the intentions of all the Defendants were to discriminate against him because of his status as a sex offender.   *See e.g.,* (ECF No. 175 at 5).   However, "[i]n general an officer's underlying motive for obtaining the warrant is irrelevant, as '[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.'"   *United States v. Romo-Corrales,* 592 F.3d 915, 919 (8th Cir. 2010) (quoting *Whren v. United States,* 517 U.S. 806, 813 (1996)); *see also United States v. Raggeman,* 279 F.3d 573, 580 n.5 (8th Cir. 2002)("[I]t is of no consequence 'that the motivation for the search did not coincide with the legal justification' for the search.") (quoting *Scott v. United States,* 436 U.S. 128, 138 (1978)).

Morgan has failed to "identify affirmative evidence from which a jury could find that [he] carried his . . . burden of proving the pertinent motive."   *Crawford-El v. Britton,* 523 U.S. 574, 600 (1998) (citing *Anderson v. Liberty Lobby,* 477 U.S. 242, 256-57 (1986)).   Morgan presented "no evidence [Detective Wright] has a personal stake in the matter that might cause him to act other than as an impartial criminal investigator."   *Morris,* 563 F.3d at 403.   Morgan "offered no specific, nonconclusory evidence that [Detective Wright] believed his affidavit was false, or recklessly misconstrued" the information provided to him by Officer Phaypanya.   *Id.*   "While we construe disputed facts in the non-moving parties' favor, we may not infer bad motive absent even a scintilla of material fact supporting that inference."   *Id.*   "Omissions and falsehoods that are immaterial or not supported by the record do not suffice."   *Howe v. Gilpin,* 65 F.4th 975, 980 (8th Cir. 2023) (citing *Morris,* 563 F.3d at 403).

The warrant affidavit was supported by probable cause.   The City Defendants are entitled to summary judgment on this claim.

### D.  Conspiracy to Remove Morgan from Phoenix House[16]

Morgan maintains the actions of the Defendants were prompted by the introduction of a city ordinance designed to prohibit any sex-offenders living in transitional housing within the City of Springdale.  *See e.g.,* (ECF No. 175 at 3-4).  Morgan states the ordinance was to take effect before his graduation and subsequent moving out of the Phoenix House.  *Id.*  Despite the ordinance not being in effect, Morgan maintains the Defendants engaged in some nebulous conspiracy to force him out of Phoenix House.[17]

"To prove a § 1983 conspiracy claim, [Morgan] 'must prove: (1) that the defendant[s] conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured [him].'"  *Bonenberger v. St. Louis Metro. Police Dep't,* 810 F.3d 1103, 1109 (8th Cir. 2016) (quoting *White v. McKinley,* 519 F.3d 806, 814 (8th Cir. 2008)).  Morgan must allege "'with particularity and specifically demonstrate with materials facts that the defendants reached an

---

[16] The City Defendants do not separately address the conspiracy claim.  However, as discussed above, the claim fails as a matter of law because of the summary judgment record.

[17] Morgan does not maintain the ordinance is unconstitutional.  In fact, the ordinance does not appear in the summary judgment record.  Further, to the extent Morgan is attempting to assert an Equal Protection claim, it fails.  The Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  This requires state actors "to treat similarly situated people alike."  *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439 (1985).  Sex offenders are not a suspect or quasi-suspect class.  *See e.g., United States v. Lafferty,* 608 F. Supp. 2d 1131, 1144 (D.S.D. 2009).  Nor does the registration requirement implicate a fundamental constitutional right.  *Id.; see also Doe, I v. Peterson,* 43 F.4th 838, 842 (8th Cir. 2022) (applying rational basis review to an Equal Protection challenge to a statutory sex offender registration provision—implicates neither a fundamental right nor suspect class).  Further, Morgan does not allege he was treated differently than other sex offenders living in transitional housing in Springdale, Arkansas.  In fact, according to his allegations, the ordinance, when it became effective, would prevent any sex offender from living in transitional housing in Springdale.

agreement.  [Morgan] can satisfy this burden by pointing to at least some facts which would suggest [the Defendants] reached an understanding to violate his rights.'"  *Borenberger,* 810 F.3d at 1109 (quoting *City of Omaha Emps. Betterment Ass'n v. City of Omaha,* 883 F.2d 650, 652 (8th Cir. 1989) (citation omitted)).

Here, the Court has only Morgan's unsupported assertions and suppositions regarding any agreement between the City Defendants and Officer Phaypanya or any other Defendant to violate Morgan's constitutional rights.  The only facts showing any connection between the City Defendants and the remaining Defendants are that Officer Phaypanya called Detective Wright to report Morgan's violations of the reporting requirements; and, Detective Wilson took possession of the phone, apparently from Majors, at Phoenix House.  (ECF No. 165-2 at 3 & 16).  Morgan's own testimony, his registration forms, and Detective's Wright's narrative, together establish Morgan had failed to report the second email address and certain social media accounts including Instagram, Tumblr, and Duo.  (ECF No. 165-1 at 35--email address was old and Instagram messages came through Facebook so "I didn't bother with it.") ;(ECF No. 165-2 at 3 & 9-12).  Based on the summary judgment record, there are no genuine issues of material fact as to whether there was a meeting of the minds between the City Defendants and Officer Phaypanya or the other Defendants to violate Morgan's constitutional rights.  The City Defendants are entitled to summary judgment on this claim.

### E.  Qualified Immunity

The City Defendants contend they are entitled to qualified immunity because Detective Wilson did not violate any of Morgan's clearly established Fourth Amendment rights by securing the cellphone; Detective Nelson did not violate Morgan's Fourth Amendment rights by copying

the cellphone's contents using the Cellebrite File System Extraction program; and Detective Wright did not violate Morgan's Fourth Amendment rights by performing a search of Morgan's cellphone pursuant to a validly issued warrant.   (ECF No. 164 at 12).

"Government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."   *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"   *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (*quoting Malley v. Briggs*, 475 U.S. 335, 341-43 (1986)).

"[T]o withstand a motion for summary judgment on qualified immunity grounds, a civil rights plaintiff must (1) assert a violation of a constitutional right; (2) demonstrate that the alleged right is clearly established; and (3) raise a genuine issue of fact as to whether the official would have known that his alleged conduct would have violated plaintiff's clearly established right." *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir. 1996).

### (1).  Fourth Amendment Claim

With respect to Detective Wilson, Morgan's only claim is that he took possession of the phone from Majors not Officer Phaypanya.   Taking possession of the phone from another in connection with a criminal prosecution does not violate the Fourth Amendment.   Chain of custody issues goes to the admissibility of evidence.    As no constitutional violation exists, Detective Wilson is entitled to qualified immunity.   *See, e.g., Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009) (unless the facts make out a violation of a constitutional right the Defendant is entitled

to qualified immunity).

With respect to Detective Wright, "a police officer in applying for a search warrant is entitled to qualified immunity from a § 1983 Fourth Amendment damage claim if his conduct was objectively reasonable." *Morris v. Lanpher,* 563 F.3d 399, 402 (8th Cir. 2009). "'Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable . . . will the shield of immunity be lost.'" *Id.* (quoting *Malley v. Briggs,* 475 U.S. 335, 344-45 (1986)).

With respect to Detective Nelson, Morgan's only claim is that he is the one who searched the phone. However, a search pursuant to a valid warrant does not violate the constitution. *See e.g., United States v. Baez,* 983 F.3d 1029, 1037 (8th Cir. 2020) ("One way for police to acquire evidence lawfully is pursuant to a valid search warrant"). Detective Nelson is therefore entitled to qualified immunity on this claim.

With respect to Morgan's argument that the affidavit contained deliberate falsehoods, "[t]ruthful in this context means that the information put forth is 'believed or appropriately accepted by the affiant as true.'" *Morris,* 563 F.3d at 402 (quoting *Franks,* 438 U.S. at 171). As discussed above, the Court has concluded that the alleged omissions or falsehoods were either immaterial to the finding of probable cause, not supported by the record, or mere conclusory allegations. Detective Wright is entitled to qualified immunity in this case. As discussed above, the affidavit was not "so lacking in indicia of probable cause to render official belief in its existence unreasonable." *Id.; see also Bagby v. Brondhaver,* 98 F.3d 1096, 1099 (8th Cir. 1996) ("qualified immunity is appropriate if defendant has been accused of submitting a recklessly false affidavit and if a corrected affidavit would still provide probable cause for the search").

### (2).   Conspiracy Claim

As discussed above, Morgan has not alleged specific and plausible allegations connecting the City Defendants to the alleged conspiracy to force him out of Phoenix House.   The first contact the City Defendants had with any of the other Defendants was when Detective Wright was contacted by Officer Phaypanya and told Morgan had been discharged from the Phoenix House based on his failure to take a drug screen.   The summary judgment record contains nothing to suggest the City Defendants conspired with other Defendants to violate Morgan's constitutional rights.   As such, the City Defendants are entitled to qualified immunity.   *See e.g., Faulk v. City of St. Louis, Mo.*, 30 F.4th 739-747-48 (8th Cir. 2022).

### F.   Official Capacity Claim

An official capacity claim is considered a claim against the employing governmental entity, here, the City of Springdale.   *Crawford v. Van Buren Cty.,* 678 F.3d 666, 669 (8th Cir. 2012)*.  "*Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an 'official municipal policy,' (2) an unofficial 'custom,' or (3) a deliberately indifferent failure to train or supervise."   *Corwin v. City of Indep., Mo.,* 829 F.3d 695, 699 (8th Cir. 2016) (citations omitted).   Municipal liability rests on the actions of the City of Springdale, not its employees.   *Bd. of Cty Comm'rs v. Brown,* 520 U.S. 397, 403 (1997).

In connection with his first claim dealing with what happened at Phoenix House, Morgan—when asked to describe the custom, policy, or widespread practice that he believed caused the violation of his constitutional rights—replied: "Parole Officers have no standards to follow and wear no body cams, so they can do whatever they want.   Word against word."   (ECF No. 39 at 6).   As previously noted, Officer Phaypanya has been dismissed from this lawsuit.   Clearly,

Morgan has stated no official capacity claim against the City of Springdale with respect to this claim.

In his second claim, Morgan alleged his phone was illegally searched the day before the warrant was issued and Detective Wright out right lied on the warrant application.   (ECF No. 41 at 1).   When asked to describe his official capacity claim, Morgan wrote: "That no one checks the dates as long as a warrant is present.   Parole officers have no S.O.P. [standard operating procedures] when it comes to searches.   The police do what they want."   *Id.* at 2.

A municipality may be held liable "if an action or policy itself violated federal law, or if the policy was lawful on its face but led an employee to violate plaintiff's rights [and] was taken with deliberate indifference as to its known or obvious consequences."   *Pietrafeso v. Lawrence Cty.,* 452 F.3d 978, 982 (8th Cir. 2006) (cleaned up).   Morgan has alleged the existence of no such policy.   Next, "[t]o trigger liability based on [an] unofficial municipal custom, the custom must be so pervasive among non-policymaking employees of the municipality that it effectively has the force of law."   *Bolderson v. City of Wentzville,* 840 F.3d 982, 986 (8th Cir. 2016).   Morgan's allegations are likewise lacking.   Finally, Morgan makes no allegations that the City of Springdale has failed to train or supervise its detectives.   Clearly these allegations and the summary judgment record fall far short of what is necessary to suggest the existence of an official policy, an unofficial custom, or a deliberately indifferent failure to train or supervise.   The City Defendants are entitled to summary judgment on the official capacity claims.

## IV.   CONCLUSION

For the reasons stated, it is recommended that:

(1)   Clint Majors' Motion for Judgment on the Pleadings (ECF No. 133) be **GRANTED**

and the claims against him be **DISMISSED WITHOUT PREJUDICE;**

(2)     Nick Robbins' Motion for Summary Judgment (ECF No. 153) be **GRANTED** and the claims against him be **DISMISSED WITH PREJUDICE**;

(3)     The City Defendants' Motion for Summary Judgment (ECF No. 163) be **GRANTED IN PART AND DENIED IN PART, as follows:**

- Specifically, the Motion should be **GRANTED** with respect to the claims based on Detective Wilson taking possession of the phone; Detective Wright's affidavit in support of the search warrant; and Detective Nelson's and Detective Wright's search of the phone after the warrant was issued.  These claims should be **DISMISSED WITH PREJUDICE.**

- The Motion should be **DENIED** with respect to Morgan's claim that the phone was searched after the City Defendants took possession of it but before the warrant was issued.   By separate Order the City Defendants will be given the opportunity to file a supplemental Motion for Summary Judgment on this issue.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).   The failure to file timely objections may result in waiver of the right to appeal questions of fact.   The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 23rd day of June 2023.

*Christy Comstock*
_____
CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE