IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

KRISTOPHER MORGAN                                                            PLAINTIFF

v.                    Civil No. 5:22-cv-05130-PKH-CDC

DETECTIVE CHAD WILSON, Springdale Police
Department; DETECTIVE DANNY WRIGHT, Springdale
Police Department; and DETECTIVE ROBERT NELSON,
Springdale Police Department                                CITY DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights action filed by Plaintiff, Kristopher Morgan ("Morgan"), pursuant to 42 U.S.C. § 1983. Morgan, who proceeds *pro se* and *in forma pauperis,* is currently incarcerated in the Tucker Unit of the Arkansas Division of Correction. The claims in this lawsuit arose when Morgan was arrested in Springdale, Arkansas, on April 28, 2022, and his cell phone seized and ultimately searched.

Through various prior Court rulings, the Court has dismissed a number of Defendants and all of Morgan's claims except for the single claim now before the Court: the claim that Detectives Wilson, Wright, and Nelson ("collectively the City Defendants") searched Morgan's cell phone between the time they acquired possession of it at 11:09 am on April 28, 2022, and before the search warrant was issued for it at 9:41 am on April 29, 2022. (ECF Nos. 10 adopted by 14, 69 adopted by 90, 226 adopted by 243). Following the filing of a report and recommendation on various pending motions including motions for summary judgment, the Court authorized City Defendants to file a Supplemental Motion for Summary Judgment on this remaining issue, and the City Defendants have done so. (ECF No. 246). Morgan responded and filed a cross Motion for

1

Summary Judgment. (ECF Nos. 257 & 258).[1] The City Defendants filed a Reply, a Motion to Strike Morgan's Motion for Summary Judgment, and a Response. (ECF Nos. 262, 263 & 265-266).[2] Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable P.K. Holmes, Senior United States District Judge, referred the Motions to the undersigned for the purpose of making a Report and Recommendation.

## I. BACKGROUND

On April 27, 2022, Morgan was living at Phoenix Recovery Center a/k/a Phoenix House, a transitional living facility licensed by the Arkansas Division of Community Correction. (ECF No. 39 at 5). On April 28th, he was called into the office to speak to Clint Majors and Parole Officer Phaypanya. *Id.* Morgan's cell phone was seized, and he was arrested. *Id.* at 5-6.

A property receipt indicates the phone and a note with the pass code pattern was picked up by Detective Wilson at Phoenix House at 11:09 am on April 28, 2022. (ECF No. 165-2 at 16). On April 29th, Detective Wright presented an affidavit for a warrant to search Morgan's phone. (ECF No. 247-2 at 1). District Judge Jeff Harper signed the warrant at 9:41 am. (ECF No. 165-

---

[1] Morgan's objections to the City Defendants' Exhibits considered to be his Response and his filing entitled "Objection to Double Standards" (ECF Nos. 257 & 267) are based on his argument that he lacks the same resources as City Defendants. Morgan maintains he does not have access to what he deems a sufficient law library, to the Internet, a printer, an attorney, etc. In other words, Morgan maintains that his incarceration and lack of funds places him at a disadvantage in pursuing this lawsuit. He asks the Court to strike City Defendants' Exhibits as they used the Internet to obtain them. While Morgan has a constitutional right of access to the Courts, he does not have a constitutional right to counsel and "[t]he state has no obligation to 'enable the prisoners to *discover* grievances [or] to *litigate effectively* once in court.'" *White v. Kautzky,* 494 F.3d 677, 679-80 (8th Cir. 2007)(quoting *Lewis v. Casey,* 518 U.S. 343, 354 (1996)). Morgan's request will be denied. Further, Morgan contends he does not know how to properly respond to a summary judgment motion. The Court, however, when it directs the filing of a response, provides explicit and detailed instructions on the requirements of Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Rules for the Eastern and Western Districts of Arkansas.
[2] The parties incorporate their prior Summary Judgment Motion and Responses in their pleadings.

2 at 14). The warrant indicated "[t]he property sought are any and all records, to include but not limited to, ownership information, social media applications, digital images, photographs, messages, and/or videos which depict images, videos, and text messages showing ownership, and use data for Kristopher Morgan." *Id.*

On April 29th, at 10:22 am, Detective Nelson used the "Cellebrite program to make a digital copy of the contents" of the phone. (ECF No. 247-1 at 1). "The Cellebrite program created a read-only copy of the cell phone's calendar, all log, contacts, device locations, instant messages, archives, audio files, configurations, databases, images, shortcuts, texts, and video files from Plaintiff's cell phone." *Id.* at 2. The program does not upload, delete, or transmit any data or information to or from the phone. *Id.* The report cannot be edited or altered. *Id.* It is Detective Nelson's understanding that "cell phone data is constantly being exchanged between the device's applications and the network the device is utilizing at any given time as long as the phone is powered on." *Id.*

After the digital copy was complete, Detective Wright took physical possession of the phone, and at 2:02 pm, Wright placed the phone in "an evidence envelope, sealed the envelope, and placed [the envelope] in a temporary evidence locker in SPD's[3] Evidence Room." (ECF No. 247-2 at 2). Once in an evidence locker, evidence can only be accessed by "an employee of the SPD Evidence Room." *Id.*

The Cellebrite extraction report indicates the extraction of "advanced logical" began at 10:22:55 am and ended at 12:27:25 pm; extraction of the file system began at 9:56:26 am and ended at 10:21:10 am. (ECF No. 165-4 at 2).

---

[3] Springdale Police Department's.

According to Morgan, the Cellebrite Extraction Report shows that 1,100 files were transferred from the cell phone beginning on April 28, 2022, at 9:06 am until 1:36 pm, and again at 2:22 pm to 3:10 pm. (ECF No. 190 at 3). A screen shot was also taken at 3:10 p.m. *Id.*

## II.   APPLICABLE STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999). A fact is "material" if it may "affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

4

### III.   DISCUSSION

#### A.   The City Defendants' Motion for Summary Judgment

The City Defendants move for summary judgment, arguing there is no evidence that cell phone files were copied, uploaded, deleted, or transmitted prior to the issuance of the warrant. The City Defendants maintain Morgan's claim is based on his misreading of the extraction report.[4]

City Defendants say the Cellebrite report utilizes Coordinated Universal Time or Universal Time Coordinated ("UTC").  The UTC utilizes a twenty-four-clock[5] based on the 0° longitude meridian located in Greenwich, England.  https://www.nhc.noaa.gov/aboututc.shtml (last visited Sept. 22, 2023).   By definition, Greenwich England is time zone 0.   *Id.*   The time in other locations is expressed as UTC plus or minus hours depending on the number of time zones a person is away from Greenwich.   *Id.*   In the United States, time zones are based on the UTC advanced or retarded by a number of hours as set forth in 15 U.S.C. § 261.   (ECF No. 4).   The UTC is not adjusted for daylight savings time.   https://www.nhc.noaa.gov/aboututc.shtml (last visited Sept. 22, 2023).   Thus, the UTC for a certain time zone depends on whether daylight savings time is observed.   Central Standard Time is expressed as UTC-6.   *Id.*   Central Daylight Savings Time is expressed as UTC-5.[6]   *Id.*   Daylight Savings Time begins at 2 am on the second Sunday in

---

[4] City Defendants argue that all material facts contained in their statement of undisputed facts should be deemed admitted because Morgan did not comply with Rule 56.1(b)-(c) of the Local Rules for the Eastern Districts of Arkansas.   That is, he did not file a statement of materials facts as to which he contends a genuine dispute exists or controvert their statement of facts.   While true, Morgan did file a cross-motion for summary judgment which includes a statement of facts.
[5] Midnight is 0 hours and 11 pm is 23 hours.
https://copradar.com/utctime/#:~:text=Greenwich%20England%20is%2C%20by%20definition,local%20standard%20(real)%20time. (last visited Sept. 22, 2023).
[6] By way of example, reference to the official U.S. Time website on September 22, 2023, currently

March and ends at 2 am on the first Sunday in November as set forth in 49 C.F.R. § 71.2. (ECF No. 247-10).

Turning to an examination of the Cellebrite report itself, the first entry mentioned by Morgan is as follows:

```
4/28/2022 9:06:49 AM(UTC+0) [Modified]
4/28/2022 9:06:49 AM(UTC+0)
4/28/2022 9:06:49 AM(UTC+0) [Modified]
4/28/2022 9:06:49 AM(UTC+0)
4/28/2022 9:06:50 AM(UTC+0) [Modified]
4/28/2022 9:06:50 AM(UTC+0)
```

(ECF No. 247-3 at 89).

The entries with a "[Modified]" notation continue until:

```
4/28/2022 1:36:04 PM(UTC+0)
4/28/2022 1:36:31 PM(UTC+0) [Modified]
4/28/2022 1:36:31 PM(UTC+0)
```

*Id.* at 110.

The entries with a "[Modified]" notation begin again at 2:22:38 pm and continue until 2:22:43:

```
4/28/2022 2:22:38 PM(UTC+0) [Modified]
4/28/2022 2:22:38 PM(UTC+0)
4/28/2022 2:22:39 PM(UTC+0) [Modified]
4/28/2022 2:22:39 PM(UTC+0)
4/28/2022 2:22:39 PM(UTC+0) [Modified]
4/28/2022 2:22:39 PM(UTC+0)
4/28/2022 2:22:39 PM(UTC+0) [Modified]
4/28/2022 2:22:39 PM(UTC+0)
4/28/2022 2:22:39 PM(UTC+0) [Modified]
4/28/2022 2:22:39 PM(UTC+0)
4/28/2022 2:22:39 PM(UTC+0) [Modified]
4/28/2022 2:22:39 PM(UTC+0)
4/28/2022 2:22:39 PM(UTC+0) [Modified]
4/28/2022 2:22:39 PM(UTC+0)
4/28/2022 2:22:43 PM(UTC+0) [Modified]
4/28/2022 2:22:43 PM(UTC+0)
```

---

shows UTC-5 with the local time as 11:39:35 am.  https://www.time.gov/ (last visited Sept. 22, 2023).

*Id.* at 111.

An entry of "[Capture Time]" appears at 3:10:58 pm:

| 4/28/2022 3:10:58 PM [Capture Time] | |
|---|---|

*Id.* There is no indication that the capture time is stated in UTC+0.

All these entries are within the call log portion of the report. (ECF No. 247-3 at 57-112). When a call was actually placed by Morgan, the time is reflected in Central Standard Time as signified by the below entries on March 11, 2022, with the time followed by (UTC-6). Daylight Savings Time was in effect when the calls were made on March 13, 2022, as signified by (UTC-5).

| 3/11/2022 7:31:43 AM(UTC-6) | To: 14799277777 |
|---|---|
| 3/11/2022 7:45:21 AM(UTC-6) | To: 14799277777 |
| 3/11/2022 7:56:12 AM(UTC-6) | To: 14799277777 |
| 3/11/2022 8:01:12 AM(UTC-6) | To: 14799277777 |
| 3/11/2022 8:02:30 AM(UTC-6) | To: 14799277777 |
| 3/11/2022 12:07:29 PM(UTC-6) | From: 4797567923 |
| 3/13/2022 12:00:00 AM(UTC+0) [Start Date] | |
| 3/13/2022 2:20:00 PM(UTC-5) | To: 18582749938 |
| 3/13/2022 2:20:29 PM(UTC-5) | To: 18552749938 |

*Id.* at 69. This supports the City Defendants' argument that the other entries are notated in Greenwich time (UTC-0).

Morgan refers the Court to pages 55, 111, and 167 of the Cellebrite report which he claims establish the City Defendants arguments are meritless and/or show "proof of double entries that an illegal surveillance program was being used on his phone." (ECF No. 257 at 1). Page 55 of

7

the report contains the following:

| | | | |
|---|---|---|---|
| 1290 | Images | | 4/28/2022 [Modified] |
| 1290(1) | Images | | 4/28/2022 |
| 1291 | Images | | 4/28/2022 [Modified] |
| 1291(1) | Images | | 4/28/2022 |
| 1292 | Images | | 4/28/2022 [Modified] |
| 1292(1) | Images | | 4/28/2022 |
| 1293 | Images | | 4/28/2022 [Modified] |
| 1293(1) | Images | | 4/28/2022 |
| 1294 | Images | | 4/28/2022 [Modified] |
| 1294(1) | Images | | 4/28/2022 |
| 1295 | Images | | 4/28/2022 [Modified] |
| 1295(1) | Images | | 4/28/2022 |
| 1296 | Images | | 4/28/2022 [Modified] |
| 1296(1) | Images | | 4/28/2022 |
| 1297 | Images | | 4/28/2022 [Modified] |
| 1297(1) | Images | | 4/28/2022 |
| 1298 | Images | | 4/28/2022 [Capture Time] |
| 1298(1) | Images | | 4/28/2022 |

(ECF No. 247-3 at 55). The Court assumes Morgan is referring to the fact that each image number appears twice with the second image having a "(1)" after it and the notation [Modified] that follows the date in the row for the original image number. The entries contain no time stamp only the date April 28, 2022. It is therefore impossible to determine from these entries if this alleged copying occurred after City Defendants were in possession of the cell phone.

On page 111 of the report, the following entries appear bearing the date April 28, 2022, appear:

| |
|---|
| 4/28/2022 2:22:38 PM(UTC+0) [Modified] |
| 4/28/2022 2:22:38 PM(UTC+0) |
| 4/28/2022 2:22:39 PM(UTC+0) [Modified] |
| 4/28/2022 2:22:39 PM(UTC+0) |
| 4/28/2022 2:22:39 PM(UTC+0) [Modified] |
| 4/28/2022 2:22:39 PM(UTC+0) |
| 4/28/2022 2:22:39 PM(UTC+0) [Modified] |
| 4/28/2022 2:22:39 PM(UTC+0) |
| 4/28/2022 2:22:39 PM(UTC+0) [Modified] |
| 4/28/2022 2:22:39 PM(UTC+0) |
| 4/28/2022 2:22:39 PM(UTC+0) [Modified] |
| 4/28/2022 2:22:39 PM(UTC+0) |
| 4/28/2022 2:22:39 PM(UTC+0) [Modified] |
| 4/28/2022 2:22:39 PM(UTC+0) |
| 4/28/2022 2:22:43 PM(UTC+0) [Modified] |
| 4/28/2022 2:22:43 PM(UTC+0) |
| 4/28/2022 3:10:58 PM [Capture Time] |
| 4/28/2022 3:10:58 PM |

files were allegedly copied, modified, or transferred to someone else. Detective Wilson did not pick the phone up until 11:09 am CDT.

Unexplained are what appear to be duplicate entries for the images for which no time is indicated, just the date April 28, 2022, and the screenshot taken at 3:10:58 pm on April 28th. (ECF No. 247-3 at 55 (images) & 167 (screenshot)). When a search is undertaken to discover evidence of criminal activity, the general rule is that a warrant is required under the Fourth Amendment. *Vernonia School Dist. 47J v. Action,* 515 U.S. 646, 653 (1995). "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." *Riley v. California,* 573 U.S. 373, 382 (2014)(citing *Kentucky v. King,* 563 U.S. 452, 459-60 (2011)). As noted in *Riley,* cell phones "place vast quantities of personal information literally in the hands of individuals." *Id.* at 386. The Supreme Court in *Riley* held that "officers must generally secure a warrant before conducting" a search of the digital content on cell phones. *Id.* Once a phone has been secured, "there is no longer any risk that the arrestee himself will be able to delete incriminating data from the phone." *Id.* at 388.

In *Riley,* the Supreme Court recognized that "[c]ell phone data would be vulnerable to remote wiping from the time an individual anticipates arrest to the time any eventual search of the phone is completed, which might be at the station house hours later." *Riley*, 573 U.S. at 390. However, remote wiping could be fully prevented by turning the phone off or removing the battery. *Id.* In the event of concern "about encryption of other potential problems, [law enforcement officer] can leave a phone powered on and place it in an enclosure that isolates the phone from radio waves" in devices commonly called "Faraday bags." *Id.* "[I]f officers happen to seize a phone in an unlocked state, they may be able to disable a phone's automatic-lock feature in order

10

to prevent the phone from locking and encrypting data." *Id.* at 391.  "Such a preventative measure could be analyzed under the principles set forth in our decision in [*Illinois v.*] *McArthur*, 531 U.S. 326 [(2013)]  which approved officers' reasonable steps to secure a scene to preserve evidence while they awaited a warrant."  *Id.*

The Supreme Court recognized that given the vast storage capacity of even the most simple cell phone, the types of functions it could be form, the apps stored on it, and the types of data stored "would typically expose to the government far *more* than the most exhaustive search of a house:  A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form—unless the phone is."  *Id.* at 396-97.

With these principles in mind, the Court turns to the remaining issues – the screenshot and the "duplicate" images.  With respect to the screenshot, City Defendants maintain it is irrelevant. Specifically, they argue that:

> [t]he photo of the locked home screen provides no proof that any of Plaintiff's files were improperly accessed, transferred, or stolen by City Defendants; in fact, the screenshot does not establish . . . that the phone's contents were accessed [at] all. The existence of the screenshot simply demonstrates that as of 3:10 p.m. CDT, the phone was on and its home screen was visible.

(ECF No. 248 at 5).

The Court agrees.  The Cellebrite Report establishes that the screenshot was of the home page.  None of the digital content stored on the phone was accessed.

City Defendants do not address the apparent duplication of the photographs or images.[8]

---

[8] Morgan maintains he should have been granted a subpoena to obtain the contents of all the City Defendants' electronic devices to verify if any of the stolen files were present on their devices. (ECF No. 257 at 2).  The Court does not agree.  Any such discovery would not be proportional

From the City Defendants' prior Motion for Summary Judgment, the case report detail indicates that prior to the SPD's possession of the phone that Officer Phaypanya, based on his own review of the phone, indicated Morgan had been searching for pornographic images. (ECF No. 165-2 at 2). After execution of the search warrant, Detective Wright saw images that he believed might constitute child pornography. *Id.* These images were reviewed by Detective Wooten who could not determine the age of the individuals depicted and no child pornography charges were pursued. *Id.*

On April 28, 2022, the evidence shows the following people were in possession of the phone prior to its being turned over to the City Defendants, including Morgan, Officer Phaypanya, and Clint Majors. Unless Morgan can connect the alleged duplication of images and/or evidence of an illegal surveillance program to the period of time **after** City Defendants took possession of the phone and **before** the search warrant was entered, City Defendants are entitled to summary judgment in their favor.

---

to the needs of the case. Fed. R. Civ. P. 26(b)(1). Morgan further points out that he has not been provided with a video from the Washington County Detention Center for which a subpoena was issued. (ECF No. 258 at 1 referring to ECF No. 182). However, in response to a show cause order, Major Denzer has established that no such video exists. (ECF No. 260). Finally, Morgan contends he has not received his cell phone data from Straight Talk Wireless. (ECF No. 258 at 1 referring to ECF No. 239). A subpoena was issued in response to Morgan's request and served by certified mail. (ECF Nos. 239 & 251). No materials were received in response to the subpoena. When the records were not received by July 17th, Morgan should have drawn this issue to the Court's attention at that time. Instead, he addresses it for the first time in his Motion for Summary Judgment. Having both responded to City Defendants' Motion for Summary Judgment and filed his own Cross-Motion for Summary Judgment, Morgan cannot now complain he does not have all the necessary facts. Morgan should have filed a motion pursuant to Rule 56(d) of the Federal Rules of Civil Procedure if he needed additional time to obtain all necessary facts. Morgan is reminded that a *pro se* litigant is not excused from complying with substantive and procedural law. *Bunch v. Univ. of Arkansas Bd. of Trs.*, 863 F.3d 1062, 1067 (8th Cir. 2017).

### B.  Morgan's Motion for Summary Judgment

Morgan's Motion does not begin on a promising note.  It is not accompanied by a brief as required by Rule 7.2 of the Local Rules for the Eastern and Western District of Arkansas.  His Motion questions the meaning of the time stamps, the purported use of UTO+0, and the 'double entry' of files.  (ECF No. 258 at 2).  Morgan devotes time towards his theory that the phone utilized a 24-hour military format.  *Id.* at 3.  He suggests this is supported by various entries including the screenshot capture time depicted *supra*.  *Id.*  However, the question is not whether the times are stated in military time or civilian time.  Rather, the question is whether the times at issue were expressed in UTO+0 time zone or CDT time zone.  As previously discussed, the entries Morgan relies on page 111 of the Cellebrite report clearly indicate times are stated in UTC+0. (ECF No. 247-3 at 55).

In his statement of facts[9] Morgan maintains that "[b]y accessing information form [his] social media accounts that Detectives Wright and Wilson[10] went beyond the scope of the legal warrant."  (ECF No. 259 at 2).  However, this assertion of fact is not borne out by the cited portions of the record.  Morgan refers the Court to a copy of his file state criminal file obtained from the prosecutor's office.  (ECF No. 201).  The first page referenced is a copy of the SPD's case report detail.  *Id.* at 18.  The referenced page refers to Officer Phaypanya' s statement that Morgan had been searching for pornographic images and to statements made by Detectives Wright and Wooton after the search warrant was executed. *Id.*  The next page referenced by Morgan is a

---

[9] Morgan includes statements of fact regarding previously dismissed City Defendants including Officer Phaypanya and Clint Majors.  (ECF No. 258 at 2).

[10] Morgan suggests the City Defendants purposefully did not submit an affidavit by Detective Wilson.  (ECF No. 258 at 1).  However, Morgan does not include any discovery responses from Detective Wilson in his own summary judgment materials.

copy of the search warrant which clearly includes within its terms "social media applications." *Id.* at 30.

Morgan maintains the Cellebrite report provides proof the City Defendants went outside the scope of the warrant because they show entries on 10/14/2022 showing "YouTube, Lyft/Uber, Spotify, and Duo [were] disabled in the phone itself." (ECF No. 258 at 3). Morgan refers to there being four reports but unfortunately does not provide the Court with record citations. The Cellebrite extraction report submitted as an exhibit (ECF No. 247-3) consists of two-hundred-and-eighty pages. Morgan was expressly advised that the Court would not sift through the record to find support for factual contentions. *See* (ECF No. 249); *Crossley v. Georgia-Pacific Corp.,* 355 F.3d 1112, 1113-14 (8th Cir. 2004). Regardless, this is the first time Morgan has made the claim that City Defendants searched the phone after the warrant had been returned. In prior rulings, the undersigned carefully delineated the sole issue remaining for disposition and authorized the filing of supplemental motions addressed only to that one issue. Morgan may not at this late date attempt to insert new issues into the case.

Neither Morgan's motion or statement of facts address the issue of the images he maintains were duplicated and/or surveilled prior to the issuance of the search warrant. He advances nothing to suggest the meaning of these entries or establish their connection to the City Defendants. Morgan's remaining factual statements are not relevant to the issue before the Court. As Morgan has failed to show the City Defendants copied data from his phone between 11:09 am on April 28, 2022, and 9:41 am on April 29, 2022, his Motion for Summary Judgment should be denied. The City Defendants Motion for Summary Judgment should be granted.

## IV. CONCLUSION

For the reasons stated, it is recommended that:

- The City Defendants Supplemental Motion for Summary Judgment (ECF No. 246) be **GRANTED and this case be DISMISSED WITH PREJUDICE;**

- Morgan's Motion for Summary Judgement (ECF No. 258) be **DENIED;**

- All other Motions (ECF Nos. 263, 269 & 270) should be **DENIED as MOOT.**

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

RECOMMENDED this 10th day of October 2023.

*Christy Comstock*
CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE